Douglas Crandall
Crandall Law Office
Veltex Building
420 W. Main Street, Suite 206
Boise, ID 83702
Telephone: (208) 343-1211
Facsimile:  (208) 336-2088
crandall_law@msn.com

# United States District Court
for the
DISTRICT OF IDAHO

| | |
|---|---|
| BUSTER WHITNEY,<br><br>    Plaintiff,<br><br>vs.<br>MARTIN A. MANGAN, D.O.; and COMMUNITY CARE POCATELLO, PLLC., an Idaho limited liability company; and COMMUNITY CARE, PLLC., an Idaho limited liability company, and EASTERN IDAHO HEALTHCARE SYSTEMS, PLLC, an Idaho limited liability company.<br><br>    Defendants. | Civil Case No.: 4:14-cv-00142-BLW<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL |

Plaintiff Buster Whitney, through his counsel of record, Crandall Law Office, submits his First Amended Complaint against the Defendants captioned above, and alleges as follows:

## JURISDICTION, PARTIES AND VENUE

1. This is a case of medical negligence against a community family medicine and urgent care clinic and its medical staff, including certain physicians' assistants and a family practice doctor.

2. The plaintiff is a citizen of the State of Washington. The defendant Community Care Pocatello, PLLC is an Idaho professional limited liability company organized and existing under the laws of the State of Idaho, with its principal place of business in the State of Idaho. All members of Community Care Pocatello, PLLC are citizens of the State of Idaho. The defendant Community Care, PLLC, is an Idaho professional limited liability company organized and existing under the laws of the State of Idaho, with its principal place of business in the State of Idaho. All members of Community Care, PLLC, are citizens of the State of Idaho. The defendant Eastern Idaho Healthcare Systems, PLLC, is an Idaho professional limited liability company organized and existing under the laws of the State of Idaho, with its principal place of business in the State of Idaho. All members of Eastern Idaho Healthcare Systems, PLLC are citizens of the State of Idaho. Martin A. Mangan, D.O., is an individual who is a citizen of, and practices medicine in, the State of Idaho.

3. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

4. At the time the medical services resulting in this claim were provided, plaintiff resided in Pocatello, Idaho and sought medical services from defendant Community Care Pocatello, PLLC.

5. Community Care Pocatello, PLLC at all material times was located in Pocatello, Idaho.

6. In December of 2012, defendant Community Care Pocatello, PLLC was administratively dissolved for failure to file the required annual report form with the Idaho Secretary of State's Office. The PLLC was reinstated on February 22, 2013, restoring Community Care Pocatello, PLLC articles of organization in the State of Idaho. The records of the Secretary of State of Idaho identifies Eastern Idaho Healthcare Systems PLLC as a manager or member of Community Care Pocatello, PLLC.

7. The Idaho Secretary of State's Reinstatement Annual Report Form filed on behalf of Community Care Pocatello, PLLC in February 2013 identifies Community Care PLLC as a member of Community Care Pocatello PLLC.

8. Community Care PLLC was administratively dissolved July 11, 2012 for failure to file the required annual report form by the due date. Community Care PLLC was reinstated, restoring its articles of organization in the State of Idaho on October 16, 2012.

9. Defendant Community Care PLLC, Community Care Pocatello, PLLC, and Eastern Idaho Health Care Systems, PLLC, all designate Idaho Falls, Idaho as their principal place of doing business.

10. It is unclear at the time of filing this complaint, without the benefit of discovery, which of the defendants had actual management and control of the day to day

operations of Community Care Pocatello, PLLC. Plaintiff will request leave of Court to amend this complaint to allege the entity with actual management and control authority over Community Care Pocatello, PLLC, when sufficient discovery can be performed to make that determination.

11. On February 12, 2014, Plaintiff filed an appropriate request for a pre-litigation screening panel hearing with the Idaho Board of Medicine against Dr. Martin A. Mangan, D.O., involving the issues in this case, which matter has been pending before the Idaho Board of Medicine. Plaintiff was precluded by the stay of I.C. § 6-1006 from joining Dr. Mangan while the matter was pending before the Idaho Board of Medicine, but now amends his complaint to add the physician since the Board has issued its decision in the matter. The statute of limitations was tolled during the period the Board had the matter under review. I.C. 6-1005.

## FACTS AND GENERAL ALLEGATIONS

12. Plaintiff hereby incorporates by reference and re-alleges herein all previous paragraphs of this complaint.

13. On April 17, 2012 Plaintiff, Mr. Whitney, came in to Community Care complaining of sinus congestion, cough, headache and temperature of 102 the previous night and 10 am that day. The Community Care Pocatello record shows Plaintiff declared his allergy to both penicillin and Ciprofloxacin in chart. Dr. Martin A. Mangan, D.O, prescribed Levaquin, 50 mg. to treat his sinus condition.

14. Ciprofloxacin belongs to the fluoroquinolone class of antibiotics, which includes Levaquin. Despite Plaintiff's informing the staff at Community Care Pocatello of his allergy to Ciprofloxacin, Dr. Mangan prescribed Levaquin, another fluoroquinolone, the

equivalent of Ciprofloxacin, to which Plaintiff had a known allergy, directing Plaintiff to take a course of ten 50 mg. tablets.

15. Plaintiff did not know, nor did he have any reason to know that Levaquin is the equivalent of Ciprofloxacin, a member of the Fluoroquinolone class of antibiotics. At no time did Dr. Mangan explain to Mr. Whitney that Levaquin is the equivalent of Ciprofloxacin. He did not inform Mr. Whitney of the possible dangers and effects of taking the Levaquin with a known allergy to Ciprofloxacin. Mr. Whitney did not give informed consent for the treatment, as he had no information about the relatedness of the drugs.

16. On April 20, 2012: Mr. Whitney returned to Community Care for follow up, complaining of coughing and sinus infection present since April 17,2012. The medical charts noted that Mr. Whitney was allergic to penicillin and Ciprofloxacin, yet Dr. Mangan continued to treat Mr. Whitney with Levaquin. Whitney's temperature was 101.3 but later in visit it was 102.1. (Mr. Whitney had been on Levaquin for 3 days by then.) The diagnoses was: "rapid influenza" and Pneumonia, severe sinusitis. He was given 2 grams of Rocephin by infusion.

17. On April 20, 2012 Mr. Whitney's chest X-ray showed scattered reticular nodular opacities, with peribronchial thickening. The radiologist advised to "consider atypical pneumonitis."

18. On April 21 ,2012, Mr. Whitney again contacted Community Care, informing them that his condition was worsening, with an inability to sleep and an increase in fever. At that time, Mr. Whitney was continuing to take the Levaquin, as prescribed. His temperature was 100.1 and later 101.3 (during infusion). At that time he had been on

Levaquin for four days. The Community Care chart notes indicate "f/u parabronchial pneumonia." He was given dexamethazone, Toradol, continued on Levaquin, 2 gms of Roccephin and 30 mg Toradol by infusion. X-ray report says: "*increasing* interstitial opacities, patchy airspace disease. Suspicious for developing pneumonia." This development despite being on Levaquin for four days. Derek Eddie PA-C, of Community Care saw and treated Mr. Whitney on this date and instructed him to continue the Levaquin, despite his worsening condition and the noted allergy to Ciprofloxacin.

19. On April 22, 2012, Mr. Whitney returned to Community Care where he was seen and treated by Derek Eddie PA-C. Mr. Whitney complained of coughing up blood and had a fever during the night. He was noted to have a cough and sputum, having had fever and chills. On examination he had wheezing and rhonchi. He was prescribed Ibuprofen 1000 mg. He was given Dexamethazone and Rocephin by I.V. and instructed to return tomorrow. There was no change in administration of the Levaquin, nor consideration of the possible allergic reaction to Levaquin, despite his condition worsening in context of having been taking Levaquin for 5 days with a known allergy to Ciprofloxacin being noted in the chart.

20. On April 23, 2012, Mr. Whitney contacted Community Care and reported continued coughing and trouble breathing. He indicated that he had been on Levaquin for six days, and that he was not responding to the treatment. His temperature was 99; BP 130/60; 90 heart rate. He had complaints of fever, chills, cough, trouble breathing and sputum. Chart note: "not responding to Levaquin (6 days) /Rocephin (5 days)." Community Care staff performed Infusion with Rocephin, Toradol, albuterol. Community Care sent Mr. Whitney to the Portneuf Medical Center emergency room for workup.

FIRST AMENDED COMPLAINT - 6

21.     On April 23, 2012, Mr. Whitney presented to the emergency room at Portneuf Medical Center with worsening shortness of breath, sinus infection and cough. He had been treated for six days previously with the antibiotic Levaquin. Mr. Whitney was admitted to the intensive care unit with diagnosis of acute respiratory failure. The Levaquin was discontinued at that time. For several days, Mr. Whitney continued to have significant oxygen requirements.

22.     The Portneuf Medical Center medical administration record notes that Whitney has allergies to Ciprofloxacin, Levaquin, and penicillin.

23.     During his stay at the hospital, Mr. Whitney was taken off the Levaquin and Rocephin.  His acute respiratory failure subsequently improved, and he was discharged to home with oxygen on May 3, 2012. Mr. Whitney's pulmonologist, Dr. Steven Krawtz felt that Mr. Whitney most likely suffered pneumonitis secondary to allergic reaction to the Levaquin, which the patient had been on since six days prior to his hospitalization. Mr. Whitney did have a known allergy to Ciprofloxacin.

24.     The discharge summary at Portneuf Medical Center noted: "Admitted to intensive care with the diagnosis of acute respiratory failure secondary to multilobar pneumonia. In subsequent days, all of his cultures, including blood and sputum cultures reported no notable growth and no bacterial etiology was identified. The final discharge diagnosis is not definitive.  The differential diagnosis included most likely a hypersensitivity pneumonitis. "I feel that the hypersensitivity pneumonitis may in fact be an allergic reaction to the Levaquin, which the patient received prior to coming in to the hospital. He did have a known allergy to Ciprofloxacin.  Patient's extensive and significant workup failed to reveal any infectious source.  Previous medications that have been

discontinued on discharge include Levaquin, Medrol Dosepak and Rocephin. There is no indication for continued need for antibiotics at this time." (All caps in original: ALSO, PLEASE NOTE THAT THIS PATIENT HAS AN ALLERGY TO FLUOROQUINOLONES AND AVOID TREATMENT WITH ANY FLUOROQUINOLONE IN THE FUTURE.)

25. Mr. Whitney's work and environment had not changed.

### COUNT ONE: MEDICAL NEGLIGENCE

26. Plaintiff hereby incorporates and re-alleges herein all previous paragraphs of this Complaint.

27. The medical care provided by the Defendants named herein failed to meet the applicable standards of care at the relevant dates alleged herein, during April of 2012.

28. The progress notes show a "developing pneumonia" with no infectious source, in the presence of Levaquin, a drug of the same family as Ciprofloxacin to which Whitney has a known allergy.

29. Community Care Pocatello staff knew from their initial intake form that Mr. Whitney was allergic to Ciprofloxacin, a drug belonging to the same floroquinolone class of antibiotics as Levaquin.

30. Despite knowledge of Mr. Whitney's allergy to Ciprofloxacin, the staff of Community Care Pocatello prescribed and treated Mr. Whitney for six days on Levaquin. Despite the six days of increasing difficulty in Mr. Whitney's breathing, the staff never once considered that Mr. Whitney was having an allergic reaction to a medication they prescribed and to which they should have known Mr. Whitney had an allergy.

31.   As a direct and proximate result of the medical negligence of the staff at Community Care Pocatello, including, but not limited to Dr. Martin Mangan and Derek Eddie PA-C, Mr. Whitney was required to be hospitalized in intensive care for several days, and has incurred medical bills in excess of $65,000 and other medical and related expenses, as well as general damages including, but not limited to past, present and future physical and mental pain and suffering and loss of enjoyment of life, and such other damages as may come to light during discovery and at trial, all in amounts to be determined at trial.

32.   The conduct of the Defendants as alleged herein was reckless such that the statutory cap on general damages set forth in Idaho Code § 6-1603 should be lifted.

## COUNT TWO: MEDICAL NEGLIGENCE OF DR. MANGAN, D.O.

33.   Plaintiff hereby incorporates and re-alleges herein all previous paragraphs of this Complaint.

34.   The medical care described above provided by Dr. Martin A. Mangan, D.O., failed to meet the applicable standards of care during the relevant dates alleged herein, during April of 2012, in the community of Pocatello, Idaho, for the administration of antibiotic drugs by an osteopathic physician under the circumstances presented. The negligence specifically includes, but is not limited to, the prescribing of a Fluoroquinolone class of antibiotics, Levaquin, in the face of Plaintiff's known allergy to the Fluoroquinolone antibiotic, Ciprofloxacin. Ciprofloxacin belongs to the fluoroquinolone class of antibiotics, which includes Levaquin. Despite Plaintiff's informing the staff at Community Care Pocatello of his allergy to Ciprofloxacin, Dr. Mangan prescribed Levaquin, another fluoroquinolone, the equivalent of Ciprofloxacin,

to which Plaintiff had a known allergy, directing Plaintiff to take a course of ten 50 mg. tablets. The prescribing of a fluoroquinolone in the presence of a known allergy to fluoroquinolone antibiotics was in violation of the standard of care.

35. The medical negligence on the part of the Defendants, and each of them, was a direct and proximate cause of, and/or was a substantial factor in causing, the illness, injuries and damages of the Plaintiff, including his being required to be hospitalized in intensive care for several days, and incurring medical bills in excess of $65,000 and other medical and related expenses, as well as general damages including, but not limited to past, present and future physical and mental pain and suffering and loss of enjoyment of life, and such other damages as may come to light during discovery and at trial, all in amounts to be determined at trial.

36. The conduct of the Defendants as alleged herein was reckless such that the statutory cap on general damages set forth in Idaho Code § 6-1603 should be lifted.

## COUNT THREE: FAILURE TO PROVIDE INFORMED CONSENT

37. Plaintiff hereby incorporates and re-alleges herein all previous paragraphs of this Complaint.

38. The Defendants failed to inform Plaintiff Whitney that ciprofloxacin (Ciprofloxacin) belongs to the fluoroquinolone class of antibiotics, which includes Levaquin. None of the staff of Community Care Pocatello informed Plaintiff of the risk that he would be allergic to Levaquin. Mr. Whitney did not know, nor did he have any reason to know that Levaquin is the equivalent of ciprofloxacin, a fluoroquinolone class of antibiotics. No one explained to Plaintiff Whitney the possible dangers of taking Levaquin when he had a known allergy to Ciprofloxacin. Defendants failed to inform Plaintiff of all pertinent

facts, specifically failing to advise him that Levaquin was the same family of antibiotics as Ciprofloxacin and that he was at risk for an allergic reaction to the drug. The failure to provide all pertinent facts prevented Plaintiff from making a reasonably informed decision to give or withhold consent to treatment with Levaquin.

39. As a direct and proximate result of Defendants' failure to obtain valid informed consent from Plaintiff, Mr. Whitney took Levaquin resulting in his suffering pneumonitis secondary to an allergic reaction to the Levaquin, which he had taken following his doctor's orders, for six days prior to his hospitalization.

40. As a further direct and proximate result of the medical negligence of the staff at Community Care Pocatello, including, but not limited to Dr. Martin Mangan and Derek Eddie PA-C, Mr. Whitney was required to be hospitalized in intensive care for several days, and has incurred medical bills in excess of $65,000 and other medical and related expenses, as well as general damages including, but not limited to past, present and future physical and mental pain and suffering and loss of enjoyment of life, and such other damages as may come to light during discovery and at trial, all in amounts to be determined at trial.

41. The conduct of the Defendants as alleged herein was reckless such that the statutory cap on general damages set forth in Idaho Code § 6-1603 should be lifted.

## DEMAND FOR ATTORNEY FEES

As a result of Defendants' conduct complained of herein, the Plaintiff has been required to retain the services of legal counsel to represent his interests in the matter. Pursuant to Idaho Code §§ 12-120 and 12-121, Rules 54(d)(1) and 54(e)(1) of the Idaho

Rules of Civil Procedure, and all other applicable laws, Plaintiff is entitled to an award of reasonable attorney's fees and costs incurred herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants as follows:

a. A sum adequate to compensate him for all allowable general damages, including, but not limited to, past, present and future physical and mental pain and suffering, loss of enjoyment of life, and any other general damages which may come to light during discovery and at trial, all in an amount to be determined at trial.

b. A sum adequate to compensate him for his special damages, including, but not limited to, all past, present and future medical and related expenses, and incidental expenses, in an amount unknown to Plaintiff at this time, but which sum shall be more readily ascertained during discovery and at trial.

c. A sum adequate to compensate him for any past, present and future loss of income in an amount currently unknown to Plaintiff at this time but which sum shall be more readily ascertained during discovery and at trial.

d. Prejudgment interest to the Plaintiff.

e. Plaintiff's reasonable attorney fees and costs incurred in the prosecution of this action.

f. Such other and further relief as this Court deems just and equitable.

Dated: May 2, 2014

_____
Douglas Crandall
Attorney for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by a jury of at least twelve (12) members on all issues properly tried to a jury in the above-entitled matter.

Dated: May 2, 2014

_____
Douglas Crandall
Attorney for Plaintiff